Your Honor, may it please the Court. My name is Jake Phillips. I represent Mr. Bradford, the plaintiff and appellant in this case. His claim is that the defendants violated the TCPA by sending him pre-recorded calls to his cell phone without first giving his prior express consent. At the district court level, the primary, really the only issue, was whether the calls that were sent by the defendants to Mr. Bradford constituted telemarketing or whether they were informational. And that was because at the time, this was pre-McLaughlin, if they were telemarketing, there was a 2012 FCC order that provided the agency interpretation of what prior express consent meant, and it was that it had to be written, and there was no question... You're not arguing advertising, right? You're only arguing telemarketing. I'm sorry? You're not arguing that SPCs constitute advertising. You're only arguing that they count as telemarketing. Telemarketing, that's correct. There was direct telemarketing to Mr. Bradford. Is there any record indication that a renewal inspection and an annual inspection differ in any way in terms of what kind of things SPC does at an inspection? Yeah, so the annual inspection is for the purpose of applying the actual pest control. And so the annual inspection is they come out, they look at the property again, and they apply the pest control. That's what they contract to do. That's the whole point of the contract is that they get rid of pests for you, right? So a renewal inspection does not apply the pest control. Renewal inspection is for the purpose of attempting to convince the consumer to purchase another year of services, at which point there would then be another annual inspection so that they could perform their contractual obligations. But they could also decide that they are not interested in the consumer, right? It's a two-way thing. Renewal inspection is not just to persuade the consumer. It could also be to tell the consumer we're done with you. I suppose in theory, although I don't know why a business would not want someone's business. I mean, they do want to do a renewal inspection so that they can make sure there hasn't been like some big change and they won't have to charge more money. But if there was a big change, the price would go up. And, in fact, the price did go up for Mr. Bradford a few times. So, yes, the point of having the renewal inspection is to make sure that, okay, last year when we agreed to this amount of money, your yard was tiny and it was fine. Since then, you've bought another couple acres and built a deck and done all the – okay, well, now we've got to charge you more. So, yes, that's why they want to do the inspection before just saying, sure, let's do it for another year. Can you do those two inspections at the same time? Can the same tech that goes out do the renewal as well as the final? Yeah, I don't see why not. Someone who's out there while he's there could be like, hey, by the way, do you want another year? What usually happens? What usually happens is that there's an annual inspection and then later, and what the lawsuit is over, is over the calls. If someone was out there, didn't have a pre-recorded call, didn't violate the TCPA, but while they were there applying the pest control, person to person, said, hey, man, you want to do another year? That wouldn't be a violation. There would be no lawsuit over that. What the violation of the TCPA was is that that wasn't what happens. They were sending pre-recorded calls to his cell phone without his prior express consent. The district – Why didn't Mr. Bradford wait so long to sue? I didn't file this law. I haven't talked to him about that. I don't know why it took him a couple years to sue. I guess he just got frustrated eventually with the pure volume of calls. That's not in the record, certainly. It's testimony to that effect. I don't believe it's in the record. Now, what the district court held was that the calls were informational and, therefore, the 1992 FCC order was binding, which that order says for non-telemarketing calls, merely providing your phone number to a defendant is implicit consent to receive the calls. Since briefing on this, in this case, even on appeal concluded, the McKesson case came out from the Supreme Court, and this court ordered supplemental briefing. So now, unlike at the district court level, all parties, including the district court, assumed that the court was bound either by the 1992 order or the 2012 order, and it just mattered whether it was telemarketing or informational. Now, of course, the court is not bound by either of those because what the Supreme Court ruled in McKesson is that the Hobb Act doesn't preclude district court judges from evaluating the reasonableness of an agency interpretation. Right, but now it seems like that's not good for you, though. Well, now we're just back to prior express consent. You don't need express written consent. You just need express consent. Correct, and what we would argue is that providing your phone number and thereby getting implicit consent does not qualify under the, the only reason that implicit consent was enough is because the FCC said that it was in 1992. But that interpretation of prior express consent is not reasonable. Whatever implicit means, it doesn't mean express. Express means directly stated. It means clear. It means unmistakable. So if we're left with solely the text of the TCPA, not what the FCC said in 1992 and not what the FCC said in 2012, but just what does prior express consent mean? It doesn't mean implicit consent. It means express, and the whole argument from the defendant and what the district court held was that no, implicit consent is enough, and so they're just for just giving your number is implicit consent and therefore satisfies the standard of the TCPA. That was true if the district court was bound by the 1992 FCC order, but he was not. But what about the fact that they were letting him call, letting them call over and over and over and over again? If somebody was calling me that I didn't want to call, I wouldn't just let them keep calling me. I'd say stop, and so that was not done for years. So why isn't that enough to show consent in addition to the, quote, implicit consent? A couple things on that point, Your Honor. First, many of the calls were not the calls that he's complaining about now. Many of the calls were just pursuant to the contract, and those weren't part of the lawsuit. He's not suing over those. What he's suing over is the prerecorded calls. But there were still many of them. And sometimes he signed the contract. I would submit that the question here is not whether the plaintiff complained about the calls but whether the calls violated the TCPA. Certainly in 2022 when the contract was over and they were still inundating him with these prerecorded calls, either those calls were with or without his consent, his express prior consent, or they were not. If they were, then it's a violation of the TCPA because the TCPA doesn't have a, you know, complain before you sue provision. It doesn't say you first have to complain about it out of court and then you're allowed to sue. It just says it's a violation. No, but this is not just some random person contacting you and saying, do this, this, this. That is the telemarketing. This is an engagement between these two sides that, you know, they've been doing a lot together. So it's not exactly nasty for them to contact. So why should it be something that was not approved by giving the number, letting them make these calls, et cetera, et cetera, and then suddenly going, nah, I want some money. Well, I guess the answer to the question is because that's what Congress said. They set up a strict liability statute. So there's no negligent standards. There's no intent standard. It's a strict liability statute. So, again, sure, maybe Congress shouldn't have done that or maybe we think that's a little unfair to defendants, but if that's what the TCPA says, and it is, then Mr. Bradford is allowed to sue over calls that violate the statute. He signed a contract that said they could do this and that he repeatedly and expressly provided express consent over the phone in these recorded calls. Well, certainly that's the merits question. In 2020, 2021, yes, we would look at it de novo. Right. Straight up, did it violate it? We've got his express consent orally on the phone repeatedly giving his consent to be called. It seems like your case is over then. We would argue that those calls in the deposition transcript that they cite, the explicit statement that he made about can you contact me on this number was relating to the bargain for services. In other words, can we call you? For services to get another look to see what you need for the next period. It's the recurring. The contract says is the bargain for service is that they will come out and apply pest control at least once a year. And if that if there are other things that come up during the year with past, they'll also come out and do that free of charge. That's what the contract that was the contracted for services. There is language in the contract saying, and, you know, if both of us want to, we'll keep doing it. We'll keep doing the contract. And of course, the contract says, of course, they want to keep getting the money and doing the services. And it acknowledges that, sure, if we both want to, we're allowed to make a contract. That's just true in the world about anything. Right. It doesn't mean that you're allowed to send pre-recorded calls without someone's prior express consent. And the difference between this type of inspection and a final inspection. So the final inspection is if someone there's a money back guarantee. And so if someone says, hey, whatever went wrong, whatever, I want my money back. They basically say, yes, we will give you your money back subject to a final inspection to make sure that there wasn't something that you did wrong. That means we don't have to give you our money back. So it's unrelated to either the annual inspection or which is contemplated by the contract or the renewal inspection, which is not contemplated by the contract. In fact, we only know what that term is because that's the term that defendant uses for it internally. It certainly wasn't in the text of the contract. I believe there's two different things. I think there's like a termite component to it and then just a general pest component to it. I assume pests would be like raccoons, rats, possums, whatever. But I think that's, I mean, defendant would probably know this better. But I believe that termite is something separate from pests. In other words, there's like, there's a solution you would use for termites, which is different than what you might spray for pests. Is the contract the same way? Would there be a final inspection and then a renewal? I do not think that when it comes to inspection that there's a distinction between the two. It's just that the product or the services that they're using are different for termites than they would be for pests. That's off of my memory and I could totally be wrong. Defendant might know more about that than I do. But I do not believe the contract distinguishes between the two for purposes of the annual inspection. We would also submit, which we did this in our supplemental brief, but because the district court conducted no analysis of the actual text of the TCPA, he only did an analysis of the FCC agency interpretations, we pointed out to the court that when the Supreme Court ruled in McKesson, the remedy was they remanded all the way back to the district court to reconsider the statute at issue in light of the fact that they were not bound by the agency interpretation. And so we would submit that that might be the most sensible solution here as well, so that the district court can actually do a textual analysis of what prior express consent means in this context. What textual analysis needs to be done? It seems like prior express consent means you need to give consent expressly. And there's evidence in this record that consent was given expressly that seems to be unrefuted. So I guess I'm having a hard time figuring out why we would send this case back under these circumstances. What is not refuted is that when a live individual asks him whether he was fine being in contact on his number about the annual inspection, he said, yeah, that's fine. This is the number you should call to schedule the thing that you're already obligated to do. The whole reason I'm paying you is to come do this inspection, so yes, you're allowed to call me to make sure that you're able to come out and do the thing I'm paying you to do. That does not mean that he expressly consented to separate telemarketing calls trying to convince him to purchase another year of services. And so in the first instance, that may be expressed. It was oral consent, right? But expressed, that's fine. That doesn't then mean that he expressly consented, which is why the district court didn't say that he did. The district court said he provided the number. That's implicit consent, and that's enough under the 1992 order. And we would suggest that that— What does the district court need to do, though? I don't understand what analysis the district court would do of the TCPA. We decide whether, in light of the fact that the 1992 order is no longer binding on him, whether merely providing a phone number to someone is not just implicit consent but is expressed consent, and therefore— Can't we do that? The court could. If the court wants to do the analysis, we think that the district court would rule in our favor on remand, and we think this court would under textual analysis as well. I was just pointing out that when it was the Supreme Court, they didn't then say, and here's what our—now that we've said the agency interpretation is not bounding, now here's what the actual text of the statute means. Instead, the Supreme Court said, well, the district court didn't do that analysis. It's the court of first review, and so we're going to send it back. That's determining, like the district court did, that this was informational rather than telemarketing. Because that distinction no longer matters. The only reason that distinction mattered before is that it then put us in the 1992 FCC order bucket where implicit consent was enough. Now, whether it's telemarketing, informational, whatever, it doesn't really matter. Either way, implicit consent is not enough. You have to have prior direct consent—prior expressed consent. I'm sorry. Unless there are any questions, I'll reserve the rest of my time for Ruelo. Thank you. Good morning, Your Honors, and may it please the Court. The Court should affirm because appellant has abandoned the written consent argument and forfeited any challenge, whether legal or factual, to district court's expressed consent finding. The only question properly before the Court today is whether it should enforce its rules on forfeiture or whether it should excuse appellant's tactical decision not to challenge the finding of expressed consent in its opening brief. And I use the word tactical decision on purpose because if there's one thing I want the Court to take away from this argument, it is that the legal landscape that we are looking at today has not changed since the district court's decision was entered. The TCPA has not been amended. Loper-Bright was decided six months before appellant filed their opening brief, and this Court's decision in Crown Castle, which explains how the Hobbs Act works when you're trying to challenge an agency regulation, was decided 14 months before they filed their appellant's brief. So put differently, every argument he just made about interesting questions about prior expressed consent, what the scope is, whether they've proven it, was an argument that was available to him when he filed his opening brief. And in that framework, the one we're looking at today, which is the same as when they filed, the only error they assigned was a district court's holding that written consent was not required. They have now abandoned that position and have not preserved any challenges to prior expressed consent. So there's no reason to remand this case. The Court should enforce its forfeiture rules not just because that's the proper way to equitably apply justice, it's the equally enforced forfeiture rules, but because the question, when you send it back, as Judge Arad noted, will be the same question. Did Sovereign Pest have prior expressed consent to call Mr. Radford at the time they made those calls? The district court answered that question and said we conclusively established prior expressed consent. They have not challenged that. That issue is forfeited. There is nothing to remand in this case. So the Court should enforce its rules on forfeiture and affirm the judgment below. If we were not to decide the case on forfeiture but were instead to look at de novo on the legal issue, do you prevail? On prior expressed consent? Absolutely. I think for the reasons that you were just talking about with opposing counsel. I mean, prior expressed consent, whether it's under the statute or under the 1992 rule, which, again, they haven't challenged the 1992 interpretation in this case, and they haven't said Judge Haynen was wrong to apply the 1992 interpretation. But under that rule, it says that if you knowingly provide your phone number, you have given permission. And this is important. The rule in place at the time we made our calls, which is the rule that we look to to govern whether our actions were permissible or not, explicitly stated telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached. In his contract with Sovereign Pest, he provided his phone number. And not only that, when we called him, he repeatedly told us that he could be reached that number. As Judge Haynes mentioned, it's not just that he didn't say stop, which is something you would normally do if you don't want to be called and tired of the telemarketers, but he did so much more. On April 16th, 2020, we were asked, is it okay to call you? And he said, yes, that would be good. This is my cell phone number. April 15th, 2021, is it okay to call this number? Yes, that's correct. It is. November 20th, 2021, in case we have to call you, is this a good number? Yes. So he repeatedly, and then after that, once litigation started, he repeatedly testified that the purpose of putting his number on the contract was so Sovereign Pest could contact him. And the reason he admitted that, and this kind of goes back to the waiver issue, is because this case has always been about written consent. He was happy to admit oral consent because the only thing that mattered was written consent. Actually, the only thing he pleaded was written consent. If you look at the record on page 18, that is the violation that they allege. And our defense this entire time has been we don't need written consent because we have prior express consent. What he's asking for is for the case to be remanded so we can retool his case from the ground up and allege that what has been our defense all along, based upon what the law was when we made the calls, is now a violation of those rules. So it doesn't matter whether you didn't need written consent because he had given consent or whether you didn't need written consent because the statute doesn't require written consent. You just didn't need written consent. Correct. And I think he just admitted that. That's what I took away from the letter briefs. I think that is the only reading of the TCPA post-Loper-Bright. And it's acknowledged now. So the question about whether it's informational or telemarketing doesn't matter. And, again, the reason it should be affirmed is because that's exactly what Judge Haynen held. He held that we had conclusively established prior written consent. If they wanted to challenge that, they should have done what every appellant does in every single case. You have your primary argument, which is written consent. Not prior written consent. Prior express consent. Prior express consent. I'm sorry. You should have done what everybody does. Say, written consent. That's our horse. We're riding with it. But just in case we're wrong, we also win under prior express consent because the statute was misinterpreted, or we can satisfy that standard. They didn't do that. They went all in on the written consent standard, and they've now abandoned that. They have no other chips to play, and the court shouldn't give them a free stack of chips to go back and retool their case. During the calendar year, how many calls would there be between the parties, like to schedule inspections or whatever? I think the record evidence varies on that point. There were some years where there was a number of treatments that had to be done, so I think there was a number of automatic calls to say, hey, we're scheduling this. Reminder, we're going to come show up, things of that nature. So some years there was quite a bit of that. You're talking 20, 30, 100? Less than 100, probably. I'd say 20, 30 might be approximately in the range. I don't have that number at my fingertips. If they're coming out to treat every other week or every month, there's going to be a number of calls. I think the record does show that there were some years where we had to go out and treat the property fairly consistently. I think they point out some of those calls in their brief as appointment calls, that they say are indicative of something or another. But the point is the calls that matter in this case, which is the renewal calls, the final calls, the record is clear that those calls were only made when there was no final inspection that had yet to be done. We were obligated to provide an application of pest control products as well as do the inspection. And those calls were only made in the years where that had not yet occurred. One of the things I do want to address from what opposing counsel said is he claims that the sea change, the thing that matters, is the McLaughlin decision. And he says that we couldn't have known all about all this because McLaughlin changed everything. Well, McLaughlin was not necessary for him to challenge the 1992 interpretation of the rule. Because what McLaughlin held was that the Hobbs Act does not preclude district courts in enforcement proceedings from independently assessing an agency's interpretation. But what this court held in Crown Castle, which is a 2023 decision, which was decided, like I said, 18 months before he filed his brief, was that unlike district courts, circuit courts have jurisdiction to consider agency interpretations and parties may raise an as-applied challenges in enforcement proceedings. So under Crown Castle, this court had jurisdiction to consider any challenge he wanted to raise to the interpretation of prior expressed consent at the time he filed his brief. But not just that. Crown Castle held that if you don't raise that challenge in your reply brief, I'm sorry, in your opening brief, it is waived. That is exactly what happened at Crown Castle. They challenged the agency's interpretation as arbitrary and capricious in their reply brief, but they didn't raise it in the opening brief. And this court held that it was waived and that it could not form a basis for remand. And so if they had wanted to challenge, make any of the arguments he just made about the scope of prior consent, about the meaning of prior consent, he had to do it originally. He had to say under Loper-Bright this is wrong in his opening brief. He didn't do that. Or he could have said there's a question of fact on whether we actually provided the correct type of prior expressed consent. He didn't do that either. So where that leaves the court is with an appellate brief that has no active arguments. They have conceded written consent and they have forfeited all arguments on prior expressed consent. And to answer your questions, as we just discussed, the reasons why we could establish prior consent under the text, under the 1992 regulation, whatever have you. I'm happy to answer as many more questions as the Court has, but if not, I will yield the remainder of my time. Thank you. We have your argument. Thank you.  A couple of things, and I'll be brief on this one. First, the only year I could find to answer Judge Clement's direct question is that from May 2021 until August 2022, so a little over a year, there was 24 calls that were placed. On the forfeiture arguments, the District Court held that the calls were informational and thus implicit consent was enough under the 1992 order. At the District Court level, defendant conceded that if the calls were marketing, that they were required to give expressed consent, and we conceded that if they were informational, then implicit consent was enough. That's because that was the governing law of the land, right? It wasn't until on appeal that defendant even raised the possibility that they weren't required to give prior written consent, and as soon as they did, we did respond by saying, actually, that's irrelevant because even if the standard was only prior expressed consent, you still didn't get that. But that's not forfeiture. If it was forfeiture, then they forfeited their argument as well. The last thing that I would point out is that, to go back to one of the arguments from before, there is quite a bit of case law, and Congress even talks about this, that you can be fined and you can even consent to a certain type of call. That doesn't mean you're consenting to all types of calls, and so in the same way that I might give my number to a colleague so that he can call me about work, that doesn't mean that I'm consenting for him to call me at 11 p.m. at night to talk politics. Now I can sue him under the TCPA because he's a live person calling me, but the point is, from a nomenclature standpoint, I would be right to be like, hey, man, why are you calling me about politics? I just wanted you to call me about work. And so even if Mr. Bradford expressly consented to receive calls pursuant to the contract to do the very thing that he was paying them to do, that does not mean that he was expressly consenting to telemarketing calls to try to convince him to give them more money. Unless there are other specific questions, I'll rest on the briefing otherwise. Thank you. Thank you, Your Honor. Thank you for the arguments in this case. This case is submitted. The court will take a brief recess before considering the remaining case of the day.